E-FILED
Tuesday, 06 December, 2005  12:03:03 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Daryl D and Amy E. Littlefield,          )
                        Plaintiffs       )
                                         )
                                         )          Case No. 01-1388
                                         )
Wells Fargo Home Mortgage, Inc., and     )
GE Capital Mortgage Services, Inc.,      )
                        Defendants       )

## ORDER

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me.  Now before the court are: Defendant Wells Fargo Home Mortgage, Inc.'s Motion to Dismiss Counts I and II (Doc. #143) and Defendant GE Capital Mortgage Services Inc.'s Motion to Dismiss Count III (#141).  The motions are fully briefed and I have carefully considered the arguments of all parties. The Wells Fargo Motion is granted in part and denied in part and the GE Capital motion is granted.

## MOTIONS TO DISMISS GENERALLY

A complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41 (1957); Gould v. Artisoft, Inc., 1 F.3d 544, 548 (7th Cir. 1993).  Rather, it should be construed broadly and liberally in conformity with the mandate in Rule 8(f).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true, and all

reasonably-drawn inferences are drawn in favor of the plaintiff.  Albright v. Oliver, 510 U.S. 266, 268 (1994); Hishon v. King & Spalding, 467 U.S. 69 (1984); Scheuer v. Rhodes, 416 U.S. 232 (1974); Lanigan v. Village of East Hazel Crest, 110 F.3d 467 (7th Cir. 1997); MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 969 (7th Cir. 1995); Early v. Bankers Life & Cas.Co., 959 F.2d 75 (7th Cir. 1992).

The Seventh Circuit has emphasized the "limited analysis appropriate on a motion to dismiss under Rule 12(b)(6)." Cook v. Winfrey, 141 F.3d 322 (7th Cir. 1998).  General allegations of elements of a claim, unsupported by factual allegations in support, are sufficient to satisfy the "minimal requirements of federal notice pleading." Id. at 328.  This is true even in pleading a state-law claim arising under Illinois law, which requires much-more demanding fact-pleading.  Id.  A plaintiff may satisfy this requirement by pleading either enough operative facts or conclusions so that the defendant is given minimal notice of the claim and the court can understand that gravamen of the complaint.  Kyle v. Morton High School,  144 F.3d 448, 454 (7th Cir. 1998).  A motion to dismiss is not an occasion to argue the merits of a case.  Weiler v. Household Finance Corp, 101 F.3d 519, 524 n..1 (7th Cir. 1996).

If the plaintiff's claim as plead is "without legal consequence," dismissal is proper; Grzan v. Charter Hospital, 104 F.3d 116, 119 (7th Cir. 1997).  One of the purposes of Rule 12(b)(6) is to eliminate actions that are fatally flawed in their legal premises and are destined to fail, thus sparing litigants the burdens of unnecessary pretrial and trial activity.  Advanced Cardiovascular Systems, Inc. v. Scimed Life, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

2

**PLEADINGS AND PROCEDURAL POSTURE**

This case was stayed on August 6, 2004, pending the Seventh Circuit's decision in Parks v. Wells Fargo Home Mortage Inc . That decision was rendered on Feb. 23, 2005. See, Parks v. Wells Fargo Home Mortage Inc., 398 F.3d 937 (7th Cir. 2005). The stay was lifted following the Seventh Circuit's decision, and the Plaintiffs filed their Fourth Amended Complaint. The instant motions to dismiss followed.

The Fourth Amended Complaint (Doc. #139) consists of four counts. Counts I and IV allege breach of contract claims against Wells Fargo and GE Capital Mortgage Services LLC (formerly known as GE Capital Mortgage Services Inc.)(hereinafter referred to as GE Capital) respectively. Counts II and III allege breach of fiduciary duty claims against Wells Fargo and GE Capital respectively.

Wells Fargo has filed its motion to dismiss challenging both counts against it. GE Capital's motion challenges only Count III; an answer has been filed to Count IV.

**FACTUAL ALLEGATIONS**

The following facts were presented to the court in an earlier summary judgment motion and were recited by the court in its Order on that motion. See Order dated January 13, 2004. Not all of these facts have been specifically alleged in the Fourth Amended Complaint but the Court considers that these facts are part of the record and are cognizable at this stage of the proceedings.

On January 31, 1995, Daryl and Amy Littlefield purchased residential property in Peoria, Illinois. This property included five lots, numbered 15 through 19. Ownership of lots 15 through 18 was transferred by warranty deed, lot 19 by quit claim deed. Together,

3

the property was commonly known as 2010 East Paris Avenue, Peoria, Illinois.  In order to acquire this property, Plaintiffs obtained a  loan from Wells Fargo Home Mortgage Inc.[1]  The loan was secured by a mortgage ("Mortgage") on lots 15 through 18.  The mortgage documents and the deeds to both parcels of property showed that the taxes should be sent to Wells Fargo.

The Littlefields' Mortgage was documented on a form developed by the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") and it is commonly referred to as  an FNMA/FHLMC Uniform Instrument.  Both the Uniform Instrument and the Plaintiffs' Mortgage require that mortgage borrowers pay monthly amounts for taxes, and that this monthly amount may obtain priority over the Mortgage itself.  Both the Uniform Instrument and the Plaintiffs' Mortgage also include the following provision:

> There ... may be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with ... applicable law.  The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.  The notice will also contain any other information required by applicable law.

Mortgage, ¶ 19 [attached to Complaint]

On June 20, 1995, Wells Fargo transferred the servicing[2] of Plaintiffs' Mortgage to GE Capital Mortgage Services Inc. (hereinafter "GE Capital").  At the end of that calendar

---

[1]Norwest Bank was the predecessor to Wells Fargo Home Mortgage Inc.  The distinction is not pertinent to the issues raised herein, and for convenience the two companies are referred to jointly as "Wells Fargo."

[2]Servicing a mortgage includes collection of principle and interest payments, tax escrow payments, insurance premiums, and the like, as well as associated payments made from the collected funds.

year, Wells Fargo purged its computer system of any record of the transferred mortgage loan, retaining historical information on microfiche.   The Servicing Rights Purchase Agreement between Wells Fargo and GE Capital provided that Wells Fargo would notify the taxing authority to send all future tax notices and bills to GE Capital and further that Wells Fargo would record an Assignment of Mortgage.   The Assignment of Mortgage prepared by Wells Fargo was not dated until Nov. 16, 1998, and was not recorded until January 15, 1999.  There is no evidence of when or whether Wells Fargo ever notified the taxing authority of the change.

This transfer of servicing of the Littlefield Mortgage was part of a bulk transfer, whereby the servicing of a large number of mortgage loans was transferred from Wells Fargo to GE Capital.  Bulk transfer procedures required Wells Fargo to forward any tax statements or other correspondence received after the transfer to GE Capital via overnight delivery on a daily basis.

GE Capital provided the requisite notice to the Littlefields, and thereafter they made their mortgage payments and tax escrow payments to GE Capital.  On July 22, 1995, GE Capital sent Plaintiffs an Initial Escrow Account Disclosure Statement, indicating that a real estate tax payment for the second installment of 1994 property taxes in the amount of $970.14 would be paid from the Escrow Account in August of 1995. That payment, however, was not made in August.  In January of 1996, GE Capital sent a payment identified as "delinquent tax payment" in the amount of $1036.49 to Peoria County.  In July 1996, that payment was returned by Peoria County to GE Capital.

Someone at GE Capital incorrectly coded the returned payment, identifying it as an "additional escrow payment" instead of a returned tax payment;  the payment remained on

5

GE Capital's computer records as a payment that had been made in 1996. Compounding that error, no one in GE Capital's tax department followed company procedures that required inquiry of the governmental unit whenever a tax payment was refused. Had the inquiry been made, someone at GE Capital would have learned that the delinquent taxes for Lots 15 through 18 had already been purchased by Realtax Developers, Ltd. and both installments of the 1994 taxes on lot 19 had been purchased by Edward Beasley.

In February of 1996, Realtax Developers sent out a notice of its purchase of the delinquent 1994 taxes. The notice was sent to the Littlefields c/o Wells Fargo. No notice was sent to the Littlefields at their home address. Notice was not sent to GE Capital either, because Wells Fargo had not recorded GE Capital's interest. It is not clear from the evidence presented to the court whether Wells Fargo - which had already purged its computers of information relating to the Littlefield Mortgage - did anything in response to the notice, but it is safe to say that if anything was done, it was neither effective nor timely.

On August 25, 1998, Carol Huff, as assignee of Realtax Developers, filed a Petition for Tax Deed with respect to Lots 15 through 18. In September, the Littlefields were personally served with a copy of a "Take Notice" concerning Huff's Petition.

Plaintiffs inquired of Wells Fargo, and on September 24, 1998, Wells Fargo responded to the inquiry by letter. The letter revealed that Wells Fargo had confirmed that the 1994 and 1995 taxes on lot 19 were delinquent and had been sold at tax sale in December of 1996; the taxes plus redemption fee totaled $715.54. The letter also confirmed that the 1995 taxes on lots 15 through 18 were delinquent; taxes plus redemption totaled $1892.97. The letter then stated:

6

These records confirm [Wells Fargo] disbursed from your escrow account the 1994 tax for [lots 15 through 18] in the amount of $1,036.47.  Since it is the responsibility of [Wells Fargo] to have paid the 1994 tax for both parcels, we are forwarding a check to you in the amount of $405.42 which represents the following:

[Lot 19] 1994 Base of $40.02 and Redemption of $155.65
[Lots 15-18]       1995 Redemption of $209.74*

*Please note, we have also elected to pay the 1995 redemption cost of $209.75 as a courtesy due to the inconvenience this issue may have caused.

As the county informed me there are other delinquent taxes owed for disbursements your current servicer is responsible for, I urge you to contact GE Capital Mortgage at your earliest convenience to confirm any outstanding tax installments owed.

At some point in the Fall of 1998, after being served with the Take Notice and after receiving the letter from Wells Fargo, Amy Littlefield went to the courthouse with the Take Notice, paying the amount the clerk told her would take care of the problem.  The amount was between $1000 and $1200, but she does not know the exact amount.

There is no indication that Wells Fargo ever contacted GE Capital.  Daryl Littlefield, however, did call GE Capital.  After he received the Take Notice and the letter from Wells Fargo, he called an 800 number for GE Capital and spoke with an employee who, after obtaining account information, assured him that the matter would be resolved.  It appears, however, that GE Capital did nothing, at least not in time to prevent the issuance of a tax deed.  Carol Huff filed a petition for an order issuing a tax deed on December 15, 1998, for lots 15 through 18.  The petition was served on the Littlefields individually as well as on the Littlefields c/o Norwest Bank;  GE Capital was not served, as their interest in the property had never been recorded.  The tax deed was issued to Huff.

On December 23, 1998, Daryl had a conversation with Doug Huff, (Carol Huff's husband) and was informed that it was too late to redeem the taxes but that "arrangements" could be made.  On that same date, Daryl Littlefield obtained a bank check

in the amount of $250, which he used to pay Edward Beasley for the delinquent taxes on lot 19.

Despite the issuance of the tax deed, Daryl and Amy Littlefield[3] believed that the tax problems had been cleared up.  They continued to make monthly mortgage and escrow payments to GE Capital, at least up to June 1, 2000.  According to their testimony, they heard nothing more regarding those problems until September 2,1999, when they received a letter from Statewide Properties, who had purchased the property from Carol Huff.  The letter was addressed to "Occupant" and sent to the Littlefields' address.  The letter informed the reader of the tax deed and notified the reader that the move out date was September 30, unless arrangements were made to rent the premises from Statewide.[4]

On May 24, 2001, a second letter was sent by Statewide to "Occupant" at the Littlefield address, notifying the reader that monthly rent would be charged and asking either that the reader vacate the premises by July 15, 2001 or that arrangements for rent be made.  On November 1, 2001, Daryl Littlefield entered into a lease for lots 15 through 18 with Statewide Properties.

On April 4, 2003, defendant Wells Fargo re-purchased the Littlefields' property from the tax buyer and then conveyed the property to the Littlefields.  At the same time, Wells

---

[3]Amy and Daryl Littlefield separated during the course of events described herein, and Amy moved out of the residence at issue in this case.  The separation is irrelevant for purposes of the issues raised in the pending motions, so this order accords no significance to that fact.

[4]On Feb. 15, 2000, Daryl received a letter from Peoria County State's Attorney Kevin Lyons' office, notifying him that the property would be offered for sale for non-payment of real estate taxes.  The significance of this letter - months after the tax deed had issued - is not clear.  Neither party relies on this letter for their arguments.

Fargo released the mortgage, and as of the date of this Order the Littlefields' ownership remains free and clear of any mortgage.[5]

## BREACH OF FIDUCIARY DUTY

Underlying both parties' motions is a question about the plaintiffs' claim for breach of fiduciary duty.  Plaintiff argues that the Seventh Circuit did not rule on the fiduciary duty claim, so they are not precluded from proceeding on that claim.  Defendants, on the other hand, argue that the Court of Appeals opinion in Parks limits the recovery of damages to contractual damages, thereby precluding the recovery of any additional damages under a theory of breach of fiduciary duty.

The Seventh Circuit did not explicitly discuss whether a fiduciary duty existed, a significant issue in this Court's analysis.  The Appellate Court did, however, acknowledge the existence of both a fiduciary duty claim and a contract claim.  The plaintiff's argument that the Court did not deal with the issue, therefore, simply cannot be correct.

Implicit in the Parks opinion is the Appellate Court's underlying assumption that, if a fiduciary duty existed, it arose from the contract between the parties and not, as this Court had found, from the statute.  The Court then equated the remedies that exist at law for these two claims, applying the law of contract remedies to both claims.  In other words, the existence of a fiduciary duty does nothing with respect to creating additional remedies, over and above standard contractual remedies.  Damages were measured by the law of contract only, limiting the possible damages to actual pecuniary loss.

_____

[5]  It is not clear from the record whether the underlying loan, too, was forgiven. That matter should be cleared up for the record in future proceedings

The law articulated in <u>Parks</u> is the law of this case as well.  Therefore, I find that the plaintiffs are limited in the damages they may recover to contractual damages, that is, compensatory damages.  They may recover neither punitive damages nor damages for emotional distress.  To the extent that the parties' motions attack the punitive damages and emotional distress damages, they are granted.

Wells Fargo also asserts that  any compensatory damages incurred by the plaintiffs would be completely set off by the bank's release of the Littlefield mortgage.  Illinois' longstanding law of setoff was summarized in <u>Bank of Chicago-Garfield Ridge v. Park Nat.</u> <u>Bank</u>,  606 N.E.2d 72,75-76,  (Ill.App.1992), where the court stated:

> Setoff most commonly appears as a counter-demand interposed by a defendant against a plaintiff in a lawsuit, arising out of a transaction extrinsic to plaintiff's cause of action.  See, e.g., <u>Studley v. Boylston </u>(1913), 229 U.S. 523, 528 <u>Peterson v. Iris</u> <u>Theater Co. </u>, 218 Ill.App. 416, 420 (1920); <u>Luther v. Mathis</u>, 211 Ill.App. 596, 601 (1918); <u>Black's Law Dictionary </u>1230 (5th ed. 1979).  Deriving sanction under statute, and in certain circumstances, at equity (see <u>Scott v. Armstrong</u> (1892), 146 U.S. 499; <u>Messick v. Rardin</u>, 6 F.Supp. 200 (E.D.Ill.1934)), setoff normally must be pleaded, except in certain limited circumstances.  See e.g., <u>Luther</u>, 211 Ill.App. at 601; see also <u>Lane v. Volunteer Cooperative Bank</u>, 30 N.E.2d 821 (Mass.1940). There is no inherent right in equity to set off one demand against another; rather, equitable setoff was conceived as a limited remedy, and is available only where the debts are mutual, mature, and "of such a certain and ascertainable character as to be capable of being applied in compensation of each other," <u>Smith v. Billings</u>, 62 Ill.App. 77, 85 (1896) without the intervention of the court to estimate them.  <u>Faber,</u> <u>Coe & Gregg, Inc. v. First National Bank</u>, 246 N.E.2d 96 (Ill.App.1969).

See also, <u>Citizens Bank of Md. v. Strumpf</u>, 516 U.S. 16, 18 (1995)( the right of setoff allows parties that owe each other money "to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A."), quoting <u>Studley</u>, 229 U.S. at 528); <u>In re Murphy</u>, 203 B.R. 972, 975 (Bankr.S.D.Ill.1997) (citation omitted) ("[T]he right of setoff allows parties that owe mutual debts to each other to assert the amounts owed on these debts, subtract one from the other, and then pay only the balance."); <u>In re</u>

<u>Clark Retail Enterprises, Inc.</u> 308 B.R. 869, *895 (Bankr.N.D.Ill.,2004);   <u>In re Martin</u>, 130 B.R. 930, 938 (Bankr.N.D.Ill.1991).

None of the legal questions related to setoff are addressed in Defendant's motion, which simply assumes that the generic concept of setoff equates to the legal doctrine of setoff and that it applies in this case.  The defendant makes no argument as to intent or the other legal elements of setoff, and there is no application of those legal principles to the facts.  The court will not make arguments for the defendant, and the motion is denied on those grounds.  It may be re-raised at summary judgment or trial, as an affirmative defense.  The Defendant may move to amend the pleadings as a separate count or as an affirmative defense depending on its view of the law and facts.

### GE CAPITAL'S MOTION TO DISMISS

In GE's motion to dismiss, the Defendant challenges Plaintiffs' claim for breach of fiduciary duty.  Defendant states that the Seventh Circuit's decision in <u>Parks </u>found that the "duty owed by the mortgage servicer under the circumstances was contractual only."  As discussed above, that is a correct statement of the <u>Parks</u> decision.  The motion is allowed.

### CONCLUSION

For each of these reasons, Wells Fargo's Motion to Dismiss is granted in part and denied in part.  GE Capital's motion is granted.  Counts II and III are dismissed. Wells Fargo is directed to file an answer to Count I within 14 days of the date of this Order.

This case is set for a scheduling conference on Friday, January 6, 2006, at 10:30 a.m. via phone; the court will set up the call.

ENTER this 6th day of December, 2005.

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE